All right. I see we still have you here, Ms. Pollack. Our fourth case for this morning is United States v. Collins. Thank you. And once again, this is Ms. Pollack. May it please the Court and Ms. Boyle. And Ms. Boyle. Central District of Illinois. This is a case that involves what we like to call he said, he said. And this is something that normally, you know, a clear error review of a district court's factual finding, it's pretty clear what's going to happen when we come up here. But I think this case is different. And the reason why I think this case is different is because we have a much lengthier history of Mr. Collins' truthfulness, which was somehow disregarded by the district court in sentencing. We've been up here before on this case. The first time, it was because the government said that he was a leader organizer, and the court agreed that was not, in fact, correct. So Mr. Collins' statements about the one-off transaction were affirmed by this court, reversed back down to take off a leader organizer enhancement, at which point we were left with the issue of whether he was telling the truth during his safety belt proffer. I would note that in the first sentencing hearing, the government had requested the imposition of an obstruction of justice enhancement because according to their confidential source, Mr. Collins found a GPS device on his car, took it off, destroyed it, and said, I found me a Fed box. That was patently false. Their confidential source was a liar. Counsel, let me just focus you on this $40,000. Since it's clear error review, and we have this other evidence, there was no auction that day, that he was a dealer, and the price of the cocaine, all of that stuff. Focusing in on that, how can we say it's a clear error? Well, I'll tell you. And part of the reason I'm getting there is because what I'm trying to get to is that Mr. Collins told the truth and was found to have been credible to the detriment of the government's confidential source on multiple occasions. So he told the truth about the GPS device. He told the truth about dealing cocaine. He told the truth about the amounts. He told the truth about his sources. That doesn't mean he might not lie about that. Well, but if you look at the totality of the circumstances, it is a reason to think that maybe he's not lying about that. But the problem is the day of the auction. But that's not ... Okay, sorry to interrupt. That's not his truthfulness. That's just a fact. But it's not, and I'll tell you why. And I think that if the court goes to Exhibit A, which was presented at the sentencing hearing by the defendant, to assess his credibility during that proffer interview, you will find that Mr. Collins has one of the worst stutters of anybody that you ever heard. And he repeatedly can't get it out, and the whole interview is like that. And at the point of the interview that was referenced with clarity and with clarity, I was going to go to the auction that evening. You actually can't hear that. It's very unclear. He mentioned something about an evening, but he already told them he was on his way back to Danville that night to go to the gym. He never specifically said, I am going to the auction tonight. He said, a gym, back to the evening. That's what you hear. He said $40,000 allegedly to buy a car when there's apparently not a car available for purchase at the time. But that's not the issue. Because the whole issue was, what he said was, I had $40,000 in my trunk. Here's where I got it from. I had sold this car, these parts, et cetera. Here's the amounts I got for it. I was doing those deals in Bloomington. I was on my way back to Danville, which is where he lived, to go to the gym. And then he never said, I'm going to take that $40,000 tonight and buy a car. What he said was, he was going to use the money to buy a car. That's clear. He never said, I'm going there tonight to buy a car. And my argument was, the auction was the next day. He was probably going to go the next day to buy the car. And the agent said, well, there's no car that you could possibly purchase for that much. These are crap cars. And I said, no, they're not. You don't know how expensive they are. There's Beamers, there's Mercedes, there's Cadillac Escalades. These cars are a big deal to this guy. That's his side business. As you'll find out if you listen to the tape, his side business is selling and repairing used cars and switching them out. So he was going to go to the auto auction and buy a vehicle. And the $40,000 in the trunk was going to be for that purpose. And the quote in the brief that he was going that evening, it is very difficult to understand him because he has this horrible speech impediment, which even the judge recognized in the ruling and said in the transcript of the second sentencing, it's really hard to understand what this guy is saying because of his speech impediment. And additionally, what the court said at the sentencing was, well, I'm not totally convinced he's telling the truth. I think it's maybe implausible, but I don't know. But it's the defendant's burden to show me that he's telling the truth. Well, it is in our circuit. It is. And I did because I showed the tape along with all the other evidence from previously where the obstruction of justice, the confidential sources were incredible. They were liars. And we showed it. And the court dropped off the obstruction of justice enhancement on that basis because their confidential source, the same one they're relying on to say he was going to sell this, go buy cocaine, also said that he destroyed a GPS device calling a defense box when in reality it was in perfectly good shape at his mechanic's house. So the confidential sources that the government is relying on are not, in fact, credible witnesses. So there goes that angle. And when we presented that tape, everything else he said on the tape was true. The judge found that it was all true. He said that the sources were right. The prices were right. The individuals he was working with were right. And what you'll also hear on the tape, which I think is really the story here, is that they kept trying to extend the proffer to other areas outside of the proffer interview. So if you're doing a full cooperation agreement, you got to tell everything you ever knew about anybody else forever, including yourself, your brother, your mother, and everyone. If it's a proffer pursuant to the safety belt, it's just you and your role in the offense that you are convicted of. That's the difference between the two. That's why with a cooperation proffer, the government gets to decide if you're truthful. And with a safety belt proffer, the court gets to decide if you're truthful. And so what we have in that situation is you hear on the tape, the government keeps trying to extend their tentacles into other areas. And I stopped them and said, you can't do that. This is a safety belt proffer. But if you want to give him full cooperation, we'll tell you everything we ever knew. And they said no. And they were mad because he hadn't cooperated before and waited until the last minute. So what you have here is they confirm every other thing he says during that proffer interview. It's all true. Except for the $40,000 and you're saying that he carried the burden by destroying the credibility of the confidential informant who said... And that the agent couldn't contradict him at all. I mean, you have to ask yourself the question. Sure, I presented the entire proffer of which the judge found he was completely truthful but for one tiny statement. Then you present the agent who was totally contradicted in his theory as well because he said there's no cars there that are that expensive but he doesn't actually know. He says the auction's the next night. Well, was he actually going that night? The judge gets to wade in on clear error of view into a factual dispute involving credibility determinations in the record. Usually though, when a district court... The reason that standard exists, and I'm not disagreeing with you that that's the standard. But the reason that standard exists is because district courts watch witnesses and they're able to see how they present in court. They're able to see how they behave, how they respond. And because of that totality of observation, they're able to make that credibility determination. Here the court watched the interview and said... I don't know the exact spot and I can look it up on rebuttal which I'm almost into. But he said that he thought the flow of the interview that he was truthful and that he was forthcoming. But yet, because there was no definitive proof that he wasn't going to buy a car the next day, that I haven't met my burden of proof. And that is an impossible burden with everything else that has already been presented. So I know that it's an uphill battle for clear error, but sometimes the battle is won if there is sufficient evidence presented to show that the credibility determination was correct. And I'll reserve for rebuttal. Thank you. Ms. Boyle. Thank you, your honors. May it please the court, counsel. My name is Catherine Boyle on behalf of the United States. Your honor, defense counsel has acknowledged that it is an uphill battle to show that the district court committed clear error in this type of situation. And here the defense counsel, the defendant has not won that battle. The district court did not clearly err in finding that Mr. Collins did not meet his burden of showing by a preponderance that he made a full and complete disclosure regarding the $40,000 of cash he had in his car and therefore was not eligible for the safety valve. Now you don't have to spend $40,000 on the same day. You could save it for tomorrow or the next day. So the timing just with the money isn't terribly helpful to you. Well, your honor, I think there are supporting facts that assist in showing that Mr. Collins was not truthful about the $40,000 in the car. Not only is there the fact that the Clinton auto auction was not until the next day. Right, but Ms. Pollack says maybe if we listen carefully to this proffer, he never said it was that night. Well, your honor, I believe around that point in the proffer it is discussed that Mr. Collins was planning, he said, on going to the gym, which is in Danville, which is east on I-74 from Champaign. Mr. Collins was picked up in the Champaign area, more or less, and then mentions something about the Clinton auto auction that evening, which was actually in the opposite direction, west on I-74, in the other direction of Danville. But how many miles separates them? Your honor, I would have to look that up, but I can provide additional information on the exact number of miles if you'd like. People zip back and forth in the interstate all the time. I'm not sure that that's... I know people go down to Champaign for lunch from Chicago, and then they come back. What about counsel's point, too, that this evening isn't audible? Your honor, it is true that Mr. Collins does have a stutter, which is evident in viewing the videotape. He does mention this evening when he's discussing going to the auction. And the district court judge made a detailed ruling describing exactly where everybody sat during the proper interview, discussing Mr. Collins' stutter, and finding, I believe, that Mr. Collins... And discussing the fact that this was inconsistent, discussing the fact that Mr. Collins' statement that he was going to use the cash to purchase a car at an auto auction was inconsistent with the fact that the auto auction was the next day. And I believe we also need to consider the fact, is it common for somebody who's going to the gym to leave $40,000 of cash in their car? That's another issue. We also heard from a confidential source that the defendant was planning on going to Danville to purchase a kilo, and we had heard from a different confidential source that the defendant had recently partnered with somebody to purchase kilos of cocaine. So I think that you have to consider these other factors as well in supporting the fact that Mr. Collins is not telling the truth about what's going on here. He says he's going to Danville to go to the gym, but we have other information saying, no, he's actually going to Danville to purchase a kilo of cocaine. He's got an amount of money in the car that is consistent with what the DEA agent testified was the purchase price for a kilo of cocaine at the time. The district court... This is a fact-specific inquiry, and the district court's findings The agent also testified, did he not, that drug dealers always say they're going to buy a car. That's always an excuse they use. The agent did testify. Where does he get off testifying to that? Was he an expert on excuses that drug dealers give? Is that what you were trying to say? Your Honor, the... We've just been all... We really made it pretty clear what you... DEA agents becoming ordained experts on everything in the world. Why wasn't that just reversible error right there? Your Honor, the DEA agent was testifying based on his experience. Yeah, that's what they all say, but there was no foundation laid for that testimony at all. Your Honor, I believe he was offering an opinion based on his personal experience. These DEA agents offer testimony on everything. They're the world's experts on everything. They walk in Wikipedia's. Additionally, Your Honor, since this was a sentencing, I don't believe the rules of evidence would have applied, so I think the agent's opinion would have been appropriate. Yeah, but then the question is, should the judge have accepted it? Your Honor, the... Would he have accepted the agent's view on what the law was as well? The agent has a lot of experience testifying about the sentencing guidelines. Should he accept that? That's a different matter, Your Honor. The agent is... Why? Because here the agent is testifying to a factual issue that on previous occasions he has heard people engaged in drug dealing say that they were using this large amount of cash. What bothers me about it is it's very... It's a very good indication of just how hard the government was pushing the envelope to make sure this guy didn't get the safety valve. You really pushed the envelope on that one, and it shows you had a weak case and you were willing to risk it. Your Honor, I don't believe that's correct, and I'd also... I think that goes to another point I'd like to correct the defense counsel was making about scope. She suggests at one point that it was not within the scope of the defendant's 3553-F obligations to discuss where this money was going. The defendant admits in the proffering that some of this money is drug proceeds. It is absolutely within the scope of 3553-F for the defendant to explain where he planned for this cash to go. In light of the district court's findings, which included the issue of the auto sale date, the fact that the defendant was going in the wrong direction, the defendant's involvement in drug dealing, the statement by the cooperator saying he had planned to purchase a kilo in Danville, which is where he was going, the approximate kilo price of $40,000, and the fact that drug dealers use cash to purchase distribution amounts, the district court found that Mr. Collins was not credible regarding his plans for the cash in the proffer. Defense counsel has admitted that in certain respects there is a he said, he said element here, and the credibility determination by the district court can almost never be clear error. The judge basically doesn't make a credibility determination, though. He makes a burden of proof determination. He throws his hands up and he says, I don't really know what's going on. He says, so let me make it clear. I'm basing my decision on my understanding of the burden of proof and my belief that the defendant bears that burden. If I'm wrong about that burden, then this is an issue which should be revisited. So he's not really saying I believe that Mr. Collins was lying. He's saying I'm not convinced enough by a preponderance that Mr. Collins was lying. The district court judge correctly found here that he that Mr. Collins had not shown which was his burden under a preponderance of the evidence that he was telling the truth during this proffer interview. Even though he makes this admission against self-interest about part of this $40,000 being drug proceeds, I would think that goes strongly in his favor. The district court addresses this during sentencing, and he said there are a number of reasons that Mr. Collins may not have been entirely truthful about the $40,000. It could be that he didn't want to discuss a higher source he was planning to purchase cocaine from, and there are a number of reasons a defendant might want to do that. But at the end of the day, it wasn't up to the district court judge here to determine exactly why Mr. Collins wasn't telling the truth, nor was it up to the government to show that he was planning even to purchase a kilo with that money. It was up to Mr. Collins to show that his explanation for the $40,000 was credible. And the district court found here that the only thing he really had is he was driving the wrong way on I-70. Well, Your Honor, we have more than that. We have the fact that he was driving the wrong way. We have the fact that he was reportedly supposed to be purchasing a kilo in Danville, which is the way he was driving. We have the fact that he had $40,000 in cash for a car auction before... I can think of plenty of cars that would go for $40,000 or more. Yes, Your Honor, but this was the day before the action, and the defendant had suggested... So what? I mean, I don't, I don't, I just don't understand that. There are people who live in the cash economy. Yes, Your Honor, the defendant said he was going to the gym. I think the suggestion that he planned to leave cash in his locker or car would be one that the district court would be perfectly entitled to make a credibility finding or to make a factual finding. What, the trunk doesn't lock? Your Honor, cars are stolen on a regular, frequent, on a frequent basis. I don't think that's... Look, I don't walk around with 50 cents in cash. I've given up on it altogether since lots of places don't even take it anymore, but there are people who work with cash. Yes, Your Honor, and perhaps... It's still legal tender, the last I checked. Perhaps a different court might have made a different factual determination, but on a review of the record here, it does not lead to a definite and firm conclusion that the district court is mistaken, so we would request that this court affirm. Okay. Thank you, Your Honor. Thank you. Anything further, Ms. Pollack? Yes, I just wanted to refer the court to that line I was talking about, which is on page eight of the resentencing transcript on May 21st, where it says, so how do I decide this? This really troubled me because I watched that proffer. I watched and heard the tones, the intonations being taken, the flow of the questions, dealt with the defendants, considered the defendants' true intentions. And the court seems troubled by this. I think part of that is that Mr. Collins received a 121th mandatory minimum sentence, whereas guidelines would have been three years and he'd be out running around right now if it weren't for this one particular ruling. But just to address a couple of the things that the government said, the confidential source that they had was blown out of the water in terms of credibility and shouldn't have been considered and wasn't considered in the ruling on obstruction of justice. The agent didn't testify that they always use it to buy cars. He said, well, I guess sometimes that happens, which is hardly determinative of- And that was on the key point of whether your guy was going to buy this car or not. Right. And that's what this really turns on, right? Right. The judge's credibility on that question. That is one of the main points, yes. Although when the judge ticked through the factors and said, this is what I see driving and summed up the evidence, unless I missed it, he didn't identify that as one of the points. There were six points, Your Honor. That wasn't one of them, was it? I cannot recall, honestly. I'd have to go back and look at the transcript. One of the things I know that he did rely on was the fact that the price of a kilo of cocaine was $40,000. And in fact, the agent testified it was $32,000. That might be pennies to some people, but it's $1,000. It's a lot of money that is different from the agent's testimony. And I never said that the $40,000 doesn't matter. What I said was that people outside the scope of this offense are not relevant for a safety valve proffer. Anyone within the scope or relating to the offense is relevant, which is why we're here fighting over one statement among 45 minutes of statements that the district judge thought I did not prove. Ergo, Mr. Collins is spending an extra seven years in prison. So that is all we ask for remand for imposition of the safety valve. Thank you. All right. Thank you. And thanks as well, Ms. Boyle. We will take the case under advisement.